Allen C. **WELLS**, Petitioner,

v.

M. L. **STALLINGS** and the State of North Carolina, Respondents.

Civ. No. 1810.

United States District Court
E. D. North Carolina,
Raleigh Division.

May 4, 1966.

Allen C. Wells, pro se.

T. Wade Bruton, Atty. Gen. of N. C., Raleigh, N. C., for respondents.

BUTLER, Chief Judge.

This application for writ of habeas corpus raises the question whether a state prisoner who attacks his conviction in a state court but withdraws his objections can later present the same allegations in a federal habeas corpus proceeding when there are no presently available state remedies.

No purpose would be served by a detailed analysis of the proceedings in this case. We would be constrained to afford petitioner a hearing on at least one allegation [1] were it not for the events which are discussed below.

Petitioner pleaded guilty to two charges of breaking, entering, and larceny at the March 1963 Term of Wilson County Superior Court in Cases No. 120 and No. 124. The cases were consolidated for judgment and one sentence im-

---

1. Petitioner presents two allegations of constitutional proportions. *First,* he says that a police officer promised him a prison term not to exceed four years in exchange for a plea of guilty to two charges of breaking, entering, and larceny; the officer, petitioner says, was to discuss the matter with the trial judge. Petitioner pleaded guilty, but he received an eight-year term. If petitioner entered the plea based on the alleged representation, he would have established that his plea was coerced. Smith v. United States, 321 F.2d 954 (9 Cir. 1963). *Second,* petitioner alleges that he had no lawyer at his trial. He alleges no facts indicating that the State denied him the right to have counsel. The court, therefore, could dismiss this ground as conclusory.

posed. He later filed application for post-conviction relief under N.C.Gen. Stat. §§ 15–217 to 15–222 in Case No. 120. The application was heard at the August-September 1964 Term of Wilson County Superior Court.[2] At the conclusion of the hearing, petitioner

> " * * * announced in open court that he now desires to withdraw his petition; that he had conferred further with his family and attorney and, with the court's permission, he preferred to withdraw his petition and be returned to complete the judgment of the court entered at the trial of his case." [3]

Petitioner alleges that he withdrew the petition because his attorney at the post-conviction hearing was incompetent, and because "he also threaten of my getting more time." The contention that petitioner's attorney was incompetent is conclusory in the absence of supporting facts, and is entitled to no consideration here. Nor can petitioner brush aside his election not to pursue state post-conviction remedies by alleging that his lawyer "threatened" him with the possibility that, upon a new trial, petitioner might receive a longer sentence than was pronounced at the first trial. Indeed, there was the duty of counsel so to advise his client. An attorney would be derelict who did not apprise his client of the consequences of each considered choice, both in respect to the wisdom of seeking a new trial as well as in the determination of how to plead upon the trial.

The question is posed whether petitioner's election not to pursue the state post-conviction remedies bars collateral relief here.

Petitioner alleges that he is not barred, because in the state attack at the August-September 1964 Term of Wilson County Superior Court he brought into question only the validity of his conviction in Case No. 120. A later post-conviction application attacking the conviction in No. 124 was denied, he says, due

to the state court's erroneous conclusion that petitioner was barred from further post-conviction relief by virtue of his election not to pursue the attack in Case No. 120. The issues which petitioner assigned as voiding the convictions were the same in both cases. Hence, the usual rule that different allegations may be presented in successive collateral proceedings does not apply.

■ It is true that in his first application for post-conviction relief petitioner asserts that he is attacking the conviction in Case No. 120. There is no mention, per se, of Case No. 124. However, the minutes of the court show that both cases were consolidated for trial and judgment, and that petitioner was sentenced to eight years in the state prison. It is that judgment of conviction which petitioner collaterally attacked in the state court. The application for post-conviction relief which he says was confined to Case No. 120 recites:

> "Wherefore the premises considered petitioner respectfully prays that a nunc pro tunc order be issued from out and under the seal of this court setting aside the plea of guilty and vacating the sentence of eight (8) years * * * *"

Obviously, the attack at the August-September 1964 Term of Wilson County Superior Court was not restricted to alleged infirmities in Case No. 120, for the judgment was inextricably a part of both cases. They were consolidated and heard together, and one judgment was rendered. The petitioner himself recognized the unity of the cases when he attacked the sentence. When he elected to withdraw his attack, he asserted his desire to serve the balance of the term as it was imposed—not a proportionate part that might have been assigned to Case No. 120. The two state cases being inextricably merged in the consolidated judgment, and the petitioner having asserted all of his constitutional claims with respect to one case, the State was not

---

2. He raised there the same issues presented here.

3. Judgment, In the Matter of Allen Wells, Wilson County Superior Court, September 11, 1964.

required to adjudicate the same claims in the companion case in an attack upon the same judgment.

 Unquestionably, rights secured to criminal defendants by the United States Constitution can be waived. The waiver can apply to rights that attach *before, at,* and *after* the trial proper.[4] A convicted defendant who lately learns of these rights is not compelled to assert them in a collateral proceeding; he may elect, as countless numbers have no doubt done, to complete service of a technically void conviction rather than risk the possible consequences of a new trial. When at a trial he knowingly and intelligently waives constitutional rights he cannot be heard later to demand a new trial on the theory that he has changed his mind; his waiver binds him for all time. Similarly, when he knowingly and intelligently waives post-conviction remedies, he should be denied resort to later collateral proceedings for relief upon the abandoned claims. It would be an anomaly, indeed, to say that a defendant could be bound by his election at a trial, but that he is not bound by an election after the trial. This court is not disposed to announce such a paradox.

 The conclusion that petitioner is bound by his state court waiver is compelled by the statute and case law of federal habeas corpus. The statute, 28 U.S. C.A. § 2254, requires that a petitioner attacking a state conviction exhaust available state remedies before pursuing the attack in a federal court.

"The requirement that state remedies be exhausted before relief is sought in the federal courts is grounded primarily upon the respect which federal courts have for the state judicial processes and upon the administrative necessities of the federal judiciary. State courts are duty bound to give full effect to federal constitutional rights and it cannot be assumed that they will be derelict in their duty. Only after state remedies have been exhausted without the federal claims having been vindicated may federal courts properly intervene. Indeed, any other rule would visit upon the federal courts an impossible burden, forcing them to supervise the countless state criminal proceedings in which deprivations of federal constitutional rights are alleged." [5]

Thus, regard for state processes and the fact of administrative burdens are the primary reasons for the exhaustion rule. We deny numerous applications annually for the sole reason that petitioners have not exhausted state remedies. We do so not because of an academic insistence on procedural detail, but because the primary responsibility to correct federal constitutional errors which vitiate a state conviction rests upon the state courts, and for the further reason that the state courts are better equipped to process the complaints than the federal courts.

If a state prisoner can institute and abandon state collateral proceedings without a decision on the merits of his claim, and then assert exhaustion, he could by that simple expedient circumvent the rule of exhaustion and shift the burden of collateral hearings to the federal courts. The unseemly conflict be-

---

4. For cases holding that constitutional rights may be waived, see for example: Barkman v. Sanford, 162 F.2d 592 (5 Cir.), cert. denied, 332 U.S. 816, 68 S.Ct. 155, 92 L.Ed. 393 (1947) (indictment by a grand jury for a felony or infamous crime); McCranie v. United States, 333 F.2d 307 (5 Cir. 1964) (trial by jury); Howard v. Commonwealth of Kentucky, 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421 (1906) (presence at selection of jurors); Diaz v. United States, 223 U.S. 442, 32 S. Ct. 250, 56 L.Ed. 500 (1912) (presence during trial and confrontation of wit-

nesses); Williams v. Steiner, 213 F.Supp. 600 (D.C.Md.1963) (exclusion of evidence illegally obtained); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (privilege against self-incrimination and right to counsel); Caldwell v. Hunter, 163 F.2d 181 (10 Cir.), cert. denied, 333 U.S. 847, 68 S.Ct. 649, 92 L.Ed. 1130 (1947) (presence of counsel at sentencing). Fn. 1, McNeil v. State of North Carolina, D.C., 248 F.Supp. 867 (1965).

5. Wade v. Mayo, 334 U.S. 672, 679–80, 68 S.Ct. 1270, 1274, 92 L.Ed. 1647 (1948).

tween state and federal courts and the administrative burdens on the federal judiciary, both of which Congress sought to avoid, would thus arise.

Under our dual system of government, a state prisoner who intentionally and voluntarily relinquishes a collateral attack in the state courts must be held by the federal courts to have effectively waived all claims thus abandoned. We are fearful of the results that would spring from a contrary rule. For the foregoing reasons,

It is ordered that the application for writ of habeas corpus be and it is hereby denied.